1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    BUNGIE, INC., et al.,                      Case No. 21-cv-05677-EMC   (DMR)

8                  Plaintiffs,

9          v.                                   **ORDER DENYING WITHOUT
                                                PREJUDICE *EX PARTE*
10   ANDREW THORPE, et al.,                      APPLICATION FOR LEAVE TO TAKE
                                                LIMITED EARLY DISCOVERY**
11                 Defendants.                   Re: Dkt. No. 11

12

13         Plaintiffs Bungie, Inc. ("Bungie"), Ubisoft Entertainment, and Ubisoft, Inc. (together,

14   "Ubisoft") own and publish two popular online multiplayer video games.  They claim that

15   Defendants Andrew Thorpe, Jonathan Agueda, Wesam Mohammed, Ahmad Mohammed, and a

16   number of unnamed defendants (the "Doe Defendants") operate an online business venture called

17   Ring-1 that sells software that provides cheats and hacks to Plaintiffs' games.  Plaintiffs allege

18   violations of copyright, trademark, and related laws.

19         Plaintiffs make this *ex parte* application for leave to take limited early discovery pursuant

20   to Federal Rule of Civil Procedure 26(d) and Civil Local Rule 7-10 to identify nine anonymous

21   Doe Defendants.  Application for Leave ("Appl.") [Docket No. 11].  The Honorable Edward M.

22   Chen referred this matter to the undersigned for resolution.  This matter is suitable for

23   determination without oral argument.  Civil L.R. 7-1(b).  The court denies Plaintiffs' application

24   without prejudice.

25   **I.      BACKGROUND**

26         Plaintiffs are the owners and publishers of the online multiplayer video games "Destiny 2"

27   and "Tom Clancy's Rainbow Six: Siege" ("R6S") (the "Games").  Compl. ¶ 1 [Docket No. 1].

28   Bungie is the owner and developer of Destiny 2, a game in which players can cooperate to fight

United States District Court
Northern District of California

United States District Court
Northern District of California

1    against computer-controlled opponents or fight against one another. *Id.* ¶¶ 22-23. Bungie offers

2    Destiny 2 to the public for free; players simply download the software online. *Id.* ¶ 43. Players

3    must purchase in-game currency to acquire optional items, unlock new characters, or gain access

4    to exclusive content. *Id.* Bungie owns all rights to Destiny 2 and multiple trademarks associated

5    with that software franchise. *Id.* ¶¶ 29-30. Bungie is incorporated in Delaware with its principal

6    place of business in Bellevue, Washington. *Id.* ¶ 9.

7    R6S, created by Ubisoft, is a game in which a player assumes the role of an elite special

8    forces operative. *Id.* ¶ 27. Each player must cooperate with other team members against a

9    competing team to complete certain military-themed objectives. *Id.* Players must purchase a copy

10   of the game or a license from a digital retailer. *Id.* ¶ 44. Players may acquire more items in game

11   either on a "free" track or a "premium" track, the latter of which is available for purchase and that

12   unlocks access to new benchmarks in the game and additional items. *Id.* ¶¶ 44-45. Ubisoft owns

13   all rights to R6S and multiple trademarks associated with that software franchise. *Id.* ¶¶ 12, 35-36.

14   Ubisoft Entertainment is incorporated and organized in France, while Ubisoft, Inc. is organized in

15   California. *Id.* ¶¶ 10-11.

16   Plaintiffs claim that Defendants are engaged in developing, selling, and supporting

17   software for sale to the public on the Ring-1 website that allows players to manipulate the Games

18   to their own advantage (the "Cheating Software"). *Id.* ¶ 2. Defendants are software developers,

19   operators or moderators of the Ring-1 website and its community forum, customer support and

20   technical assistance providers, and/or resellers who acquire and resell keys for the Ring-1

21   software. *Id.* ¶ 64. They sell weekly and monthly access to the Cheating Software for both

22   Games. *Id.* ¶ 65. Licenses for the Cheating Software are also available for purchase at authorized

23   resellers. *Id.* ¶ 66. Defendants provide extensive and ongoing customer support for the Cheating

24   Software. *Id.* ¶ 68. Plaintiffs allege the Defendants have made tens or hundreds of thousands of

25   dollars from distribution and sale of the Cheating Software. *Id.* ¶ 67.

26   Plaintiffs claim that Defendants unlawfully accessed Plaintiffs' software code to develop

27   the Cheating Software, which modifies and alters the way players engage with the games and

28   circumvents the Game's anti-cheat technology. *Id.* ¶¶ 70-85. Defendants also unlawfully

1    reproduce and use an array of images and artworks from the Games to market the Cheating

2    Software on the Ring-1 website.  *Id.* ¶¶ 64-69.

3           According to Plaintiffs, Defendants' Cheating Software severely damages their business

4    model.  *Id.* ¶ 47.  Plaintiffs generate revenue from the sale of game content, virtual currencies,

5    digital enhancements or expansions, and other so-called Battle Passes (which Plaintiffs describe as

6    a "microtransaction system" in R6S).  *Id.* ¶¶ 44, 46.  Plaintiffs say that "[i]f players perceive others

7    are cheating or have an unfair advantage, they may grow frustrated with the Games and stop

8    playing them," which will disrupt the online player community.  *Id.* ¶ 47.  Despite Plaintiffs' use

9    of anti-cheat technologies that are installed on players' computers when the software is installed,

10   entities like Ring-1 devise methods to avoid the detection of their cheating software, thereby

11   generating an "arms race" of sorts between game developers like Plaintiffs and architects of

12   cheating software like Defendants.  *Id.* ¶¶ 52-56.

13          The complaint names four Defendants who are allegedly Ring-1 staff members or

14   community members: (1) Andrew Thorpe, known by his online alias "Krypto," who is based in

15   the United Kingdom; (2) Jonathan Agueda, a/k/a "Overpowered," based in Florida; (3) Wesam

16   Mohammed, a/k/a "Grizzy," based in Indiana, and (4) Ahmad Mohammed, also based in Indiana.

17   Compl. ¶¶ 13-16.  The complaint also names Doe Defendants who are involved with the Ring-1

18   operation and who provide customer support, are moderators and/or administrators of the Ring-1

19   website, resell the Cheating Software, and/or develop and maintain the Cheating Software.  *Id*.

20   ¶ 19; Appl. at 4-5.  Plaintiffs allege violations of the Digital Media Copyright Act, 17 U.S.C.

21   § 1201(a)(2), the federal Copyright Act, the Lanham Act, the Computer Fraud and Abuse Act,

22   California's Unfair Competition Law, and intentional interference with contractual relations.

23          Plaintiffs request early discovery to ascertain the identities of nine Doe Defendants

24   allegedly involved in the Ring-1 venture, known only by their online aliases "Berserker,"

25   "Cypher," "Admin," "Calc," "Overseer," "Tralepo," "Frost," "Dove," and "Pingu."  Appl. at 4-5.

26   Plaintiffs seek to issue third-party subpoenas to the following eleven entities that they suspect

27   have information that will help identify the Doe Defendants: NameSilo, LLC; Cloudflare, Inc.;

28   Hostwinds, LLC; DigitalOcean, LLC; Lex Holdings Group, LLC; Namecheap, Inc.; Discord Inc.;

United States District Court
Northern District of California

1   Google LLC; Apple Inc.; PayPal, Inc.; and Vimeo.com, Inc.  Appl. at 5.  These entities are

2   possible domain name registrars, content distributors, web hosts, communication applications, and

3   payment processors.  *Id.* at 5-7.  The subpoenas seek the names, addresses, email addresses, and

4   other identifying information of persons or entities who registered and use the aliases at issue with

5   accounts administered by the third parties, as well as the Internet Protocol (IP) addresses used to

6   access these accounts.  *Id.* at 7.

7   **II.     LEGAL STANDARD**

8          In the Ninth Circuit, "exceptions to the general rule" that discovery may not be initiated

9   prior to the Federal Rule of Civil Procedure 26(f) conference are "generally

10  disfavored."  *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (citing

11  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  However, a court may authorize earlier

12  discovery "for the parties' and witnesses' convenience and in the interests of justice."  Fed. R. Civ.

13  P. 26(d)(3).  Courts have permitted "limited discovery . . . after [the] filing of the complaint to

14  permit the plaintiff to learn the identifying facts necessary to permit service on the

15  defendant."  *Columbia*, 185 F.R.D. at 577; *see also Gillespie*, 629 F.2d at 642 ("[W]here the true

16  identity of the defendants will not be known prior to the filing of a complaint . . . the plaintiff

17  should be given an opportunity through discovery to identify the unknown defendants, unless it is

18  clear that discovery would not uncover the identities, or that the complaint would be dismissed on

19  other grounds").

20         The plaintiff must show good cause for early discovery.  *Semitool, Inc. v. Tokyo Electron*

21  *Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  "Good cause may be found where the need for

22  expedited discovery, in consideration of the administration of justice, outweighs the prejudice to

23  the responding party."  *Id.*; *see also Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066

24  (C.D. Cal. 2009) ("The party seeking expedited discovery . . . has the burden of showing good

25  cause for the requested departure from usual discovery procedures" (quoting *Qwest Commc'ns*

26  *Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)).

27         In evaluating whether a plaintiff establishes good cause to learn the identity of Doe

28  defendants through early discovery, courts employ safeguards to ensure that such discovery "will

United States District Court
Northern District of California

4

1    only be employed in cases where the plaintiff has in good faith exhausted traditional avenues for

2    identifying a civil defendant pre-service, and will prevent use of [early discovery] to harass or

3    intimidate." *Columbia*, 185 F.R.D. at 578.  Courts examine whether the plaintiff (1) has

4    "identif[ied] the missing party with sufficient specificity such that the Court can determine that the

5    defendant is a real person or entity who can be sued in federal court," (2) recounted "all previous

6    steps taken to locate the elusive defendant," (3) established that the action can withstand a motion

7    to dismiss, and (4) demonstrated a "reasonable likelihood that the discovery process will lead to

8    identifying information about [the] defendant that would make service of process possible." *Id.* at

9    578-80.

10        "Generally, ex parte applications for early discovery are accompanied by declarations

11   which explain the party's efforts to determine the individual's identity and why the plaintiff

12   believes that subpoenas to particular service providers would yield information regarding a

13   defendant's identity." *Bellwether Coffee Co. v. Does 1-5*, No. 21-03612-JSC, 2021 WL 2333848,

14   at *1 (N.D. Cal. June 8, 2021); *see Columbia*, 185 F.R.D. at 580 (calling for "a statement of

15   reasons justifying the specific discovery requested as well as identification of a limited number of

16   persons or entities on whom discovery process might be served").  The court considers the moving

17   papers along with the complaint to determine if the plaintiff made a satisfactory showing of good

18   cause. *See Columbia*, 185 F.R.D. at 580-81; *Am. Legalnet*, 673 F. Supp. 2d at 1071 (considering

19   declarations filed in support of a motion for preliminary injunction for purposes of deciding

20   application for early discovery); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

21   *O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) (courts must examine expedited discovery

22   requests on the "entirety of the record").

23   **III.    DISCUSSION**

24        The first requirement, to identify the unknown parties with "sufficient specificity," is

25   "necessary to ensure that federal requirements of jurisdiction and justiciability can be satisfied."

26   *Columbia*, 185 F.R.D. at 578.  Plaintiffs must make a "satisfactory showing that there is an actual

27   person behind the [challenged] acts who would be amenable to suit in federal court." *Id.* at 578.

28   Courts examining this factor have considered whether the plaintiff has shown that the court will

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1   likely have personal jurisdiction over the defendant.  *See, e.g.*, *id.* (finding that the first factor was

2   met where there was evidence most of the unknown defendants had a California domicile); *Lik v.*

3   *Doe*, No. 20-cv-255-DMR, 2020 WL 1984281 (N.D. Cal. Apr. 27, 2020); *JT Foxx Org. v. Palmer*,

4   No. 17-cv-2661-DMR, 2017 WL 3617111, at *4 (N.D. Cal. Aug. 23, 2017) (determining that the

5   first factor was not met because the plaintiff did not demonstrate that the court likely had personal

6   jurisdiction over the defendant).  Plaintiffs bear the burden of establishing jurisdictional facts.

7   *Columbia*, 185 F.R.D. at 578 (citing *Wells Fargo & Co v. Wells Fargo Exp. Co.*, 556 F.3d 406,

8   430 n.24 (9th Cir. 1977)).  "A court need not grant discovery based on "'purely speculative

9   allegations of attenuated jurisdictional contacts.'"  *Graco Minnesota Inc. v. PF Brands, Inc.*, No.

10  18-cv-1690, 2019 WL 1746580, at *7 (S.D. Cal. Apr. 17, 2019) (quoting *Getz v. Boeing Co.*, 654

11  F.3d 852, 860 (9th Cir. 2011)).  The court examines Plaintiffs' complaint, application, and

12  accompanying declaration to determine if they have made a sufficient showing of good cause as to

13  jurisdiction.  *See Bellwether Coffee*, 2021 WL 2333848, at *1; *Malibu Media, LLC v. Doe*, 319

14  F.R.D. 299, 305 (E.D. Cal. 2016) (allegation in complaint that plaintiff traced Doe defendant's IP

15  address to physical address located within court's jurisdiction established good cause to serve

16  immediate discovery).

17         Plaintiffs have sufficiently identified Defendants' online aliases to establish that they are

18  real persons and entities that may be sued.  Compl. ¶¶ 17-21; Appl. at 4-5.  However, they have

19  not sufficiently shown that they may be sued in this court.  In the complaint, Plaintiffs summarily

20  allege that "[t]his Court has personal jurisdiction over Defendants because they have purposefully

21  directed their activities at the United States, and at California in particular, have purposefully

22  availed themselves of the benefits of doing business in California, and have established a

23  continuing presence in California."  Compl. ¶ 7.  They allege that Defendants "conduct extensive

24  and ongoing business with users in the United States and the State of California"; they "distribute .

25  . . advertise and market the Cheating Software . . . and communicate directly with users" in these

26  locations; they "have entered into, and continue to enter into, contracts with individuals" in these

27  locations and receive "recurring daily, weekly, or monthly payments" from them; they "contract

28  with entities in the United States and the State of California in connection with their businesses,"

1    and they "engage in conduct that they know is likely to cause harm to Plaintiffs in the United

2    States and the State of California." *Id.* Elsewhere, they allege that, on information and belief,

3    "players residing in the United States and in the California" have downloaded and used the

4    Cheating Software. *Id.* ¶ 67. In their application, Plaintiffs assert that Doe Defendants, "a

5    mixture of U.S. and foreign individuals," are "subject to personal jurisdiction in U.S. federal

6    courts." Appl. at 9.

7            Plaintiffs do not provide concrete information supporting personal jurisdiction in

8    California in their application or the supporting declaration from their counsel. *See id.*;

9    Declaration of Marc E. Mayer ("Mayer Decl.") [Docket No. 11-1]. Altogether, the conclusory

10   statements in their pleadings and moving papers do not meet the standard sufficient to show good

11   cause to depart from normal discovery procedures. *See Columbia Ins.*, 185 F.R.D. at 577.

12           **A.      Legal Standard for Personal Jurisdiction**

13           Personal jurisdiction is proper if it is "consistent with [California's] long-arm statute and if

14   it comports with due process of law." *Boschetto v. Hansing*, 539 F.3d 1011, 1020-21 (9th Cir.

15   2008). Under California's long-arm statute, a federal court may exercise personal jurisdiction

16   over a defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Code

17   Civ. Proc. § 410.10; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir.

18   2004). "A district court's exercise of jurisdiction over a nonresident defendant comports with due

19   process when the defendant has at least 'minimum contacts' with the forum and subjecting the

20   defendant to an action in that forum would 'not offend traditional notions of fair play and

21   substantial justice.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (quoting

22   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "A defendant's minimum contacts can

23   give rise to either general or specific jurisdiction." *Id.* Parties may also consent to jurisdiction

24   through a forum selection clause. *S.E.C. v. Ross*, 504 F.3d 1120, 1149 (9th Cir. 2007). The

25   court's "primary concern" is "the burden on the defendant." *Axiom Foods, Inc. v. Acerchem Int'l,*

26   *Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Bristol-Meyers Squibb Co. v. Super. Ct*, 137 S.

27   Ct. 1773, 1780 (2017)). "Although lack of personal jurisdiction is a defense that may be waived

28   by a party, the Court has an obligation to consider this issue *sua sponte* before entering an order

United States District Court
Northern District of California

7

1    against an absent defendant." *U.S. Olympic Comm. v. Does 1-10*, No. 08-03514-JSW, 2008 WL

2    2948280, at *1 (N.D. Cal. July 25, 2008) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).

3    The court considers all three bases for personal jurisdiction and finds that none are satisfied.

4        **B.    General Jurisdiction**

5        Plaintiffs have not shown the existence of general jurisdiction.  "For an individual, the

6    paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a

7    corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."

8    *Bristol-Myers*, 137 S. Ct. at 1780.  Plaintiffs state that the nine Doe Defendants whose identity

9    they seek to discover are all individuals involved with Ring-1's operation.  Compl. ¶¶ 17-20;

10   Appl. at 4-5.  However, they do not offer any facts in their complaint, application, or declaration

11   from which the court may infer that these unnamed individuals are domiciled in California.  Other

12   courts in this district have allowed early discovery to go forward to identify online Doe defendants

13   after the plaintiffs demonstrated that they used geolocation technology to trace the defendants' IP

14   addresses to physical locations in California.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 21-

15   CV-00294-SI, 2021 WL 493395, at *1 (N.D. Cal. Feb. 10, 2021); *Dallas Buyers Club LLC v.*

16   *Doe-69.181.52.57*, No. 16-cv-1156-JSC, 2016 WL 4259116, at *2 (N.D. Cal. Aug. 12, 2016); *AF*

17   *Holdings LLC v. Doe*, No. 12-04447 RMW, 2012 WL 12973140, at *2 (N.D. Cal. Nov. 6, 2012);

18   *Braun v. Doe*, No. 12-CV-3690-JSC, 2012 WL 3627640, at *2 (N.D. Cal. Aug. 21, 2012); *Pac.*

19   *Century Int'l, Ltd. v. Does 1-48*, No. C11-3823-MEJ, 2011 WL 4725243, at *2 (N.D. Cal. Oct. 7,

20   2011).  There is no indication in Plaintiffs' papers that they previously attempted to trace the Doe

21   Defendants' IP addresses or other information to California addresses; indeed, Plaintiff seek the IP

22   addresses through their subpoenas.  Accordingly, there is nothing from which the court can infer

23   the existence of general jurisdiction.[1]

24       **C.    Specific Jurisdiction**

25       Plaintiffs appear to invoke specific personal jurisdiction by reciting the relevant legal

26

27   _____

28   [1] None of the named Defendants appear to be domiciled or "at home" in California but rather in
     the United Kingdom, Florida, or Indiana.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    standard in their complaint, but they have not made a sufficient showing to infer jurisdiction on

2    that basis either. *See* Compl. ¶ 7. "There are three requirements for a court to exercise specific

3    jurisdiction over a nonresident defendant: (1) the defendant must either 'purposefully direct his

4    activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting

5    activities in the forum; (2) 'the claim must be one which arises out of or relates to the defendant's

6    forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and

7    substantial justice, i.e. it must be reasonable.'" *Axiom*, 874 F.3d at 1068. The court's "analysis

8    under the 'purposeful availment or direction' prong of the specific jurisdiction test turns on the

9    nature of the underlying claims." *Ayla*, 11 F.4th at 979. Plaintiffs allege copyright and trademark

10   infringement claims which sound in tort, so the court applies the "purposeful direction" analysis

11   under *Calder v. Jones*, 465 U.S. 783 (1984). *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201,

12   1208 (9th Cir. 2020); *see also Ayla*, 11 F.4th at 979; *Axiom*, 874 F.3d at 1069. "Under this test,

13   'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the

14   forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"

15   *AMA Multimedia*, 970 F.3d at 1209 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d

16   1218, 1228 (9th Cir. 2011)). The plaintiff bears the burden under the first two prongs. *Ayla*, 11

17   F.4th at 979.

18          With respect to the first prong, "a defendant acts intentionally when he acts with 'an intent

19   to perform an actual, physical act in the real world, rather than an intent to accomplish a result or

20   consequence of that act.'" *AMA Multimedia*, 970 F.3d at 1209 (quoting *Schwarzenegger*, 374

21   F.3d at 806)). Plaintiffs allege that "Defendants collectively are engaged in developing, updating,

22   marketing, distributing, selling, deploying, and supporting the Cheating Software." Compl. ¶ 64.

23   The complaint describes a concerted effort to access Plaintiffs' software clients without

24   authorization, develop the Cheating Software, and publicly sell it through the Ring-1 website and

25   third-party resellers. *Id.* ¶¶ 64-73. These constitute intentional acts for the purposes of

26   establishing the first prong of the *Calder* test. *See AMA Multimedia*, 970 F.3d at 1209.

27          However, Plaintiffs do not meet the second prong because they have not sufficiently

28   shown that the acts were expressly aimed at California. The Supreme Court has established that

9

United States District Court
Northern District of California

the "express aiming" test requires a showing that "the defendant's conduct connects him to the *forum* in a meaningful way," not merely to a forum resident. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (emphasis added); *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1148-49 (9th Cir. 2017) ("Plaintiffs were required to make a prima facie showing that Defendants' alleged actions were directed at [the forum state], not just at individuals who resided there."). "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'" *Ayla*, 11 F.4th at 980 (quoting *Walden*, 571 U.S. at 285). "'[S]omething more—conduct directly targeting the forum'—is required to confer personal jurisdiction." *Id.* (quoting *Mavrix*, 647 F.3d at 1229). In the case of a nationally accessible passive website, that "something more" could constitute the "interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant individually targeted a plaintiff known to be a forum resident." *Mavrix*, 647 F.3d at 1228 (internal citations and quotations omitted).

District courts in California have "declined to find express aiming based on alleged sales of products that infringe intellectual property rights through commercial, interactive websites accessible to California consumers." *Graco*, 2019 WL 1746580, at *4-6 (sale of allegedly infringing products through online customers, at least some in California, and California-based plaintiff insufficient to show California was "focal point" of the alleged harm). Recently, a court in this district granted a Rule 12(b)(2) motion where the defendant had allegedly distributed an app-based videogame that was a "blatant clone" of the plaintiff's copyrighted videogame. *Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*, 458 F. Supp. 3d 1202, 1205 (N.D. Cal. May 7, 2020) (Chen, J.). There, the plaintiff argued that the defendant "expressly aimed its infringing act to California by: (1) contracting to distribute its game through Apple and Google, both of which have headquarters in California; (2) making its game available to users in California; (3) advertising the game with California-based companies like Facebook; and (4) offering the game in English." *Id.* at 1207. The court held that "[t]he mere availability of downloading [the infringing content] in California, by itself, does not create personal jurisdiction."

1   *Id.* at 1207.  The allegedly infringing game had "no specific focus in California; the app-based

2   videogame is not about California or anything in/from California." *Id.* at 1209.  None of the

3   defendant's advertisements were directed at California or even mentioned this state. *Id.*  The court

4   also noted that there was no evidence that the downloads of the infringing game were

5   "concentrated in California" and no allegations that there was "anything unique about the

6   California-consumer market" that directed the defendant's activities to this forum. *See id.* at 1210.

7          Here, Plaintiffs have not shown that each Doe Defendant sought to engage a significant

8   California user base for the Cheating Software.  In fact, Plaintiffs "ha[ve] not identified anything

9   unique about California that caused [the Doe Defendants] to target this forum state." *Good Job*

10  *Games*, 458 F. Supp. 3d at 1207.  To begin with, all of Plaintiffs' relevant allegations describe

11  Defendants' aggregate conduct and activities with users "in the United States and the State of

12  California."  By lumping California together with the rest of the United States, it is impossible to

13  analyze whether each Doe Defendant expressly aimed their intentional acts at the forum state.

14  Plaintiffs allege, for example, that Defendants "communicate[d] directly with users in the United

15  States and California" and that "the Cheating Software has been downloaded and used . . .

16  including by players residing in the United States and in California."  Compl. ¶¶ 7, 67.

17         As was the case in *Good Job Games*, Plaintiffs' non-specific allegations that the Doe

18  Defendants conduct business with and market to U.S. and California users, and contract with

19  forum-based third parties, are insufficient to establish purposeful direction. *See id.*  Plaintiffs do

20  not specifically describe any users in California, any particular business dealings the Doe

21  Defendants had in California or with California-based entities, or any advertisements or content

22  focused on Game players in California.  "The mere availability of downloading [the Cheating

23  Software] in California, by itself, does not create personal jurisdiction." *Good Job Games*, 458 F.

24  Supp. 3d at 1208; *see* Compl. ¶ 67.

25         To the extent Plaintiffs seek to invoke jurisdiction based on contracts between the Ring-1

26  website and third-party entities such as NameSilo, Cloudfare, and PayPal, their efforts fall short.

27  Compl. ¶ 7(d).  Plaintiffs fail to describe these contracts in sufficient detail for the court to infer

28  the existence of specific jurisdiction for each Doe Defendant.  Plaintiffs briefly explain the nature

United States District Court
Northern District of California

11

1   of each contract—for example, "Plaintiffs believe that NameSilo, LLC was the [domain name]

2   registrar used to register . . . the domain for the Ring-1 Website"—but they do not show that these

3   third-party entities are headquartered in California, that there are contracts between any of the

4   entities and any of the Doe Defendants, or that the contracts demonstrate express aiming by each

5   Doe Defendant at California.  Appl. at 5-7; *see Good Job Games*, 458 F. Supp. 3d at 1208 (ruling

6   that plaintiff could not rely on relationships with "third parties headquartered in California to

7   establish that [defendant] directed its intentional acts toward this state because the focal of those

8   headquarters in California are unrelated to [defendant's] interests in the transaction at issue.").[2]

9       In sum, Plaintiffs must establish "something more" in how the Doe Defendants focused on

10   California to warrant jurisdiction here.  *Mavrix*, 647 F.3d at 1228.  *Compare Ayla*, 11 F.4th at 980

11   (specific jurisdiction where defendant's specific marketing, sales, and operations that "reflect[ed]

12   significant focus" with an "intentional, explicit appeal" to consumers in forum), *and Mavrix*, 647

13   F.3d at 1230 (website maintained a "specific focus on the California-centered celebrity and

14   entertainment industries"), *with AMA Multimedia*, 970 F.3d at 1210-12 (pornography website's

15   uploading features and advertisements lacked "forum-specific focus"), *and Axiom*, 874 F.3d at

16   1070-71 (no express aiming where only ten recipients of alleging infringing newspaper in

17   California).  Because of Plaintiffs' "purely speculative allegations of attenuated jurisdictional

18   contacts," early discovery is not warranted at this stage.  *Getz*, 654 F.3d at 860.

19       **D.      Consent Jurisdiction**

20       Plaintiffs do not appear to argue that the Doe Defendants affirmatively consented to

21   jurisdiction in California through a forum selection clause.  *See, e.g.*, *Binbit Argentina, S.A. v.*

22   *Does 1-25*, No. 19-cv-5384-KAW, 2020 WL 4284816 at *2 (N.D. Cal. July 27, 2020) (granting

23   early discovery where unnamed defendants that contracted with California-based companies

24   assented to forum selection clause in websites' terms of use).

25       In sum, the Plaintiffs have not established good cause to issue the subpoenas to discover

26   identities of the Doe Defendants because they have not met the jurisdictional requirement that the

27   _____

28   [2] In fact, one of the third-party entities, Lex Holdings Group, is based in Michigan or the United
     Kingdom, not California.  Appl. at 5-6.

United States District Court
Northern District of California

1    Doe Defendants may be sued in this court.  For the same reason, Plaintiffs would not be able to

2    withstand a motion to dismiss.  *See Columbia Ins. Co.*, 185 F.R.D. at 578-79.

3    **IV.    CONCLUSION**

4              Because Plaintiffs have not met their burden of showing the existence of personal

5    jurisdiction over the Doe Defendants, the court need not reach the remaining *Columbia*

6    requirements.  However, it is worth noting that Plaintiffs may also have problems satisfying the

7    second element, which requires them to show they "ma[de] a good faith effort to comply with the

8    requirements of service of process and specifically identify[] defendants."  *Columbia*, 185 F.R.D.

9    at 578.  The cursory explanation in counsel's declaration that Plaintiffs' investigators made "best

10   efforts" to ascertain the Doe Defendants' identities, Mayer Decl. ¶ 7, does not detail what steps

11   were taken.

12             For the foregoing reasons, the court denies Plaintiffs' *ex parte* application for early

13   discovery without prejudice.  *See JT Foxx*, 2017 WL 3617111, at *6 (denying *ex parte* application

14   for early discovery on jurisdictional grounds alone); *Berlin Media Art e.k. v. Does 1-654*, No. 11-

15   03770-JSC, 2001 WL 36383080, at *3 (N.D. Cal. Oct. 18, 2011) (same).

16

17             **IT IS SO ORDERED.**

18   Dated: November 8, 2021

19             _____

20                                    Donna M. Ryu
                                      United States Magistrate Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California