MARC E. MAYER (SBN 190969); mem@msk.com
EMILY F. EVITT (SBN 261491); efe@msk.com
MARK C. HUMPHREY (SBN 291718); mxh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUNGIE, INC., UBISOFT ENTERTAINMENT, and UBISOFT, INC., <br><br>Plaintiffs,<br><br>v.<br><br>ANDREW THORPE a/k/a KRYPTO, an individual; JONATHAN AGUEDA a/k/a OVERPOWERED, an individual; WESAM MOHAMMED a/k/a GRIZZY, an individual; AHMAD MOHAMMED, an individual; and Does 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 3:21-cv-05677-ECM<br><br>[Assigned to Judge Edward M. Chen]<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: September 13, 2022<br>Time: 1:30 pm<br>Dept: Zoom Webinar<br><br>Filed: July 23, 2021 |

CASE NO. 3:21-cv-05677

**JOINT CASE MANAGEMENT STATEMENT**

Pursuant to the Standing Order for all Judges of the Northern District of California, Plaintiffs Bungie, Inc. ("Bungie") and Ubisoft Entertainment and Ubisoft, Inc. ("Ubisoft") (collectively, "Plaintiffs") and Defendant Jonathan Agueda ("Agueda") submit the following joint Case Management Statement:

**1.     Jurisdiction and Service.**  This Court has subject matter jurisdiction over this action because it arises under federal law – namely, Sections 501 and 1201 of the Copyright Act, 17 U.S.C. §§ 501, 1201; Sections 32 and 43(a) of the Lanham Trademark Act, 15 U.S.C. §§ 1117, 1125; and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

Plaintiffs have served each of the named defendants.  None of the defendants has contested jurisdiction.  However, defendant Andrew Thorpe has failed to appear in this action and is in default.

Defendants Wesam and Ahmad Mohammad have reached a settlement with Plaintiffs.

**2.     Facts.**

<u>Plaintiffs' Statement:</u>  Plaintiffs are two companies engaged in developing and publishing video games.  Ubisoft is the publisher and owner of the game titled "Tom Clancy's Rainbow Six: Seige" ("R6S").  Bungie is the publisher and owner of the game titled "Destiny 2" ("D2").  (R6S and D2 collectively are referred to as the "Games.")  The Games are extremely popular online multiplayer games.  This case arises from the sale and distribution of software products and related services by a business venture known as "Ring-1."  The software sold by Ring-1 enables players to gain unfair advantages (i.e. to cheat) in Plaintiffs' Games (the "Cheating Software"), such as by giving them the ability to see through walls, to automatically aim weapons, and to gain access to other gameplay information that normally is hidden from the player.  Plaintiffs allege that the Cheating Software ruins the gameplay experience for legitimate players, thereby causing significant damage to Plaintiffs, their Games, and their reputation.

Plaintiffs allege that the marketing, sale and distribution of the Cheating Software by Ring-1 and its agents violates their rights in several ways.  First, Plaintiffs allege that Ring-1 and its agents have violated Section 1201 of the DMCA (the "anti-circumvention" provisions)

because the Cheating Software includes technology designed to circumvent or avoid technical measures implemented by Plaintiffs to restrict access to the Games by players who are using the Cheating Software or similar software products.  Second, Plaintiffs allege that Ring-1 and its agents have engaged in direct or contributory copyright infringement because use of the Cheating Software in combination with the Game software creates an unauthorized derivative work of the Games.  Third, Plaintiffs allege that Ring-1's use of Plaintiffs' trademarks, along with videos and screen captures of the Games, in its marketing materials constitutes copyright and trademark infringement.  Fourth, Plaintiffs allege that Ring-1 and its agents have violated the Computer Fraud and Abuse Act ("CFAA") because the Cheating Software includes hardware ID ("HWID") "spoofers," which conceal the identity of the player's computer, thereby allowing players who have been "banned" or restricted from accessing Plaintiffs' servers to improperly gain access to those servers through false pretenses.  Finally, Plaintiffs allege that Ring-1 and its agents have intentionally interfered with Plaintiffs' agreements with its players, which prohibit the players from using cheats such as the Cheating Software.

Plaintiffs have alleged that Agueda (a/k/a "Overpowered" and "Berserker") and Thorpe (a/k/a "Crypto") are or were active, high-level participants in the Ring-1 venture.  Plaintiffs allege that both were directly involved in the development, marketing, sale, and distribution of the Cheating Software.  Both also acted as website "administrators," responsible for maintaining the Ring-1 website, recruiting "resellers" of the Cheating Software, communicating with customers and potential customers (including by providing updates and technical support), and providing advice on how to use the Cheating Software without being detected by Plaintiffs.  Plaintiffs allege that Wesam and Ahmad Mohammad were "resellers" of the Cheating Software who sold licenses for the Cheating Software on behalf of the Ring-1 venture.

Agueda's Statement.

Defendant Jon Agueda has denied the allegations of plaintiffs stated above.  In particular, his actions with regard to the "Ring-1 venture" do not constitute copyright or trademark infringement and do not meet the elements of the remaining claims against him.

**3.  Legal Issues.**  The parties believe that the following are the key legal issues in the case:

- Does the distribution and sale of the Cheating software constitute trafficking in circumvention technology under Section 1201 of the Copyright Act?
- Does the use of Plaintiffs' logos, Game titles, and screen captures and videos on the Ring-1 website constitute trademark and/or copyright infringement?
- Does the use of the Cheating Software violate Plaintiffs' exclusive rights to create and sell derivative works of the Games?
- Does the use of a HWID spoofer to gain access to Plaintiffs' Game servers constitute a violation of the Computer Fraud and Abuse Act?
- Did Defendants induce a breach of Plaintiffs' contracts with their users?
- If Defendants are found liable, what is the proper measure of damages?

**4.  Motions.**  No motions currently are pending.  Plaintiffs intend to file a motion for default judgment against Thorpe.  If Plaintiffs and Agueda cannot resolve this matter informally, then Plaintiffs anticipate filing a motion for summary judgment as to Agueda's liability.

**5.  Amendment of Pleadings.**  At this time, Plaintiffs do not anticipate amending the pleadings.  However, Plaintiffs' investigation is continuing and they reserve the right to bring new claims in the future against additional participants in the Ring-1 venture in this district or in other districts (or jurisdictions) as they discover additional information about such persons.

**6.  Evidence Preservation.**  Plaintiffs and Agueda have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.  Disclosures.**  Plaintiffs and Agueda will make their initial disclosures on or before September 30, 2022.

**8.    Discovery.**

Plaintiffs' Statement.  Plaintiffs have served an initial set of written discovery on Agueda. Additionally, Plaintiffs have served several third-party subpoenas on entities reasonably likely to possess information concerning the identity of other participants in the Ring-1 venture.

Plaintiffs anticipate that discovery will include the following topics:  (1) the identity of all persons or entities involved in developing, selling, marketing and distributing the Cheating Software, (2) the development of the Cheating Software, including updates to the Cheating Software to circumvent Plaintiffs' anti-cheating technology, (3) communications among the agents and employees of Ring-1, (4) communications between Ring-1 and its customers, (5) the functioning and technical specifications of the Cheating Software, including the manner by which the Cheating Software circumvents or evades Plaintiffs' anti-cheat technology; (6) revenues and profits received by Ring-1 related to its sale of the Cheating Software; and (7) Defendants' knowledge of the unlawful nature of their activities.

Agueda's Statement.

Defendant has not served discovery as the parties appear close to settlement of this matter.

**9.    Class Actions.**  This is not a class action.

**10.   Related Cases.**  There are no related cases.

**11.   Relief.**

Plaintiffs' Statement.  Plaintiffs seek statutory damages under the Copyright Act and DMCA.  For their copyright infringement claims, Plaintiffs seek up to $150,000 in damages per work infringed.  For their DMCA claim, Plaintiffs seek $2,500 per each copy of the Cheating Software that was sold or distributed.  Alternatively, Plaintiffs seek Defendants' profits in connection with the sale of the Cheating Software or the amount of actual damage suffered by Plaintiffs as a result of the sale of the Cheating Software.  Plaintiffs have not yet been able to ascertain the precise amount received by Defendants in connection with the Cheating Software.

Plaintiffs also seek injunctive relief.  Specifically, they seek an order prohibiting the further distribution, marketing, and sale of the Cheating Software, as well as impoundment and destruction of the Cheating Software.

Agueda's Statement.

Defendant Agueda asserts that plaintiffs have not been damaged by his actions and that he is entitled to recover attorneys' fees pursuant to, *inter alia,* trademark and copyright law.

**12.** **Settlement and ADR.**  Plaintiffs and Wesam and Ahmad Mohammad have reached a settlement.  Plaintiffs and Agueda have been in settlement discussions but have not yet reached a settlement.  If Plaintiffs and Agueda are not able to reach a settlement in the next 60 days, then they wish to be assigned a panel mediator.

**13.** **Consent to Magistrate Judge.**  The parties have not consented to a magistrate judge for all purposes.

**14.** **Other References.**  None.

**15.** **Narrowing the Issues.**  Plaintiffs and Agueda do not seek bifurcation.  Plaintiffs are hopeful that Agueda will stipulate either to liability or to certain facts surrounding the Cheating Software and the manner by which it functions.

**16.** **Expedited Trial Procedure.**  This case should not be handled under the Expedited Trial Procedure of General Order No. 64.

**17.** **Scheduling.**  The parties propose the following deadlines:

Expert Designation:  June 30, 2023

Discovery Cut-Off:  July 28, 2023

Hearing of Dispositive Motions:  August 31, 2023

Pretrial Conference:  October 10, 2023

Trial:  October 23, 2023

**18.** **Trial.**  The parties request trial by jury.  Trial will be 5-7 days.

**19.** **Disclosure of Non-Party Interested Entities**.  Ubisoft Entertainment, S.A. is the parent company of Ubisoft Entertainment and Ubisoft, Inc.  Sony Interactive Entertainment, Inc. now owns 10% or more interest in Bungie's stock.

**20.  Professional Conduct.** The undersigned has reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.  Other Matters.** None.

DATED: September 6, 2022

MARC E. MAYER
EMILY F. EVITT
MARK C. HUMPHREY
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Marc E. Mayer*
    Marc E. Mayer
    Attorneys for Plaintiffs

DATED: September 6, 2022

MANDOUR & ASSOCIATES, APC

By: */s/ Ben T. Lila*
    Ben T. Lila
    Attorneys for Defendant
    Jonathan Agueda

### Attestation Regarding Signatures-Local Rule 5-1(h)(3)

I, Marc E. Mayer, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: September 6, 2022

*/s/ Marc E. Mayer*
Marc E. Mayer