MARC E. MAYER (SBN 190969), mem@msk.com
EMILY F. EVITT (SBN 261491), efe@msk.com
GENEVIEVE L. JAVIDZAD (SBN 336138), glj@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUNGIE, INC., UBISOFT ENTERTAINMENT, and UBISOFT, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW THORPE a/k/a KRYPTO, an individual; JONATHAN AGUEDA a/k/a OVERPOWERED, an individual; WESAM MOHAMMED a/k/a GRIZZY, an individual; AHMAD MOHAMMED, an individual; and Does 1 through 50, inclusive, <br><br> Defendants. | CASE NO.  3:21-cv-05677-EMC <br><br> [Assigned to Judge Edward M. Chen] <br><br> **SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION OF PLAINTIFFS FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT ANDREW THORPE** <br><br> Date:  January 19, 2023 <br> Time:  2:30 p.m. <br><br> Complaint Filed: July 23, 2021 |

# I. INTRODUCTION

Plaintiffs Bungie, Inc. ("Bungie"), Ubisoft Entertainment, and Ubisoft, Inc. ("Ubisoft," and together with Bungie, "Plaintiffs") submit this supplemental brief in response to the Court's Order of January 6, 2023 requesting that Plaintiffs provide further information regarding the type of business association that Ring-1 is and Defendant Andrew Thorpe's role in the Ring-1 enterprise.

# II. RING-1 IS AN ENTERPRISE COMPRISED OF A COLLECTION OF INDIVUDALS WORKING TOWARDS A COMMON PURPOSE

As stated in Plaintiffs' Motion, Plaintiffs' investigation revealed that Ring-1 "is not a formal legal entity, and is not owned or controlled by a partnership or corporate entity." Mot. at 5. After investigation, Plaintiffs have been unable to identify any corporate entity (of any form) or partnership (domestic or foreign) that claims to "own" Ring-1 and the Ring-1 Website.[1]  Notably, the Ring-1 Website does not contain any corporate information, and Ring-1 does not make available to the public a Terms of Service or other contract reflecting the name of any corporate entity.

Additionally, Plaintiffs' efforts to identify a corporate "owner" of Ring-1 and the Ring-1 Website have been stymied by the fact that the Ring-1.io domain name, and all hosting services, were procured through a third-party "bulletproof" hosting service purportedly based in Dominica known as "NiceVPS."  NiceVPS failed to respond to communications from Plaintiffs' counsel and, as a matter of policy, "will NOT reply to any abuse complaint" or other inquiries.  *See* Mayer Decl., Exs. 1, 2.  Plaintiffs also did not receive any responses to a subpoena sent to Ring-1's Michigan-based payment processor, Lexpay.  *Id.*, ¶ 4 & Ex. 3.

---

[1] Plaintiffs' investigation is continuing, and Plaintiffs expect to learn additional information from the settling defendants.  Accordingly, if Plaintiffs discover additional information, they are prepared to provide it in a supplemental memorandum or through declarations.

1
SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

Based on Plaintiffs' investigation, the Ring-1 enterprise appears to be entirely run by a collection of individuals with various roles, working toward a common purpose.  The primary purpose of the enterprise is to generate and sell software license "keys" for the Cheating Software.  Some of these keys are sold directly through the Ring-1 Website, and others are sold by a network of individual "resellers."  As such, the larger Ring-1 enterprise is a joint venture comprised of multiple individuals, including (1) those who control the "back-end" operation of the Website that distributes Ring-1 Cheats and validates users' subscriptions to the Ring-1 service; (2) those who control game-specific software code that is streamed to the Ring-1 user's computer to interface with Plaintiffs' Games; (3) those who act as developers who write the software (certain Doe Defendants, for example); and (4) website administrators, such as Thorpe, who are responsible for the public-facing part of the operation, such as running the Ring-1 Website, connecting customers of the Ring-1 Website to payment channels, distributing the software, recruiting resellers who sell the software to members of the public, and providing customer support.

Thorpe acted as one of the lead administrators for the Ring-1 Website.  In this role, Thorpe acted as the public face of the enterprise.  He ran the Ring-1 Website, facilitated the distribution of the Cheating Software, worked with end-users to complete online transactions, gave technical and other advice concerning the Cheating Software, provided information about software updates, and marketed and promoted the Ring-1 software.  Complaint, ¶ 13.

### III. DEFENDANT THORPE WAS AN INTEGRAL PART OF THE RING-1 ENTERPRISE AND IS PERSONALLY LIABLE FOR HIS CONDUCT.

The Court requested that Plaintiffs provide evidence that Defendant Thorpe was more than just an "employee" of Ring-1 – *e.g.*, that he was a developer of the cheating software sold by Ring-1 or that he has an ownership interest in Ring-1.

As stated above, there is no single owner or corporate entity controlling Ring-1, and thus Thorpe could not have been "employed" by any such person or entity. However, as noted, Thorpe was a high-level administrator of the website and was responsible for managing the customer-facing portion of the operation. As such, he directly participated in the unlawful conduct at issue. Plaintiffs have reason to believe that as a prominent administrator for Ring-1, Thorpe received revenue not only from administering the Website, but also in connection with the sale of the Cheating Software. Thorpe's failure to participate in this action has denied Plaintiffs the ability to assess the amount of revenue that Thorpe received or how such revenue was calculated.

In his role, Thorpe directly facilitated the distribution of the Cheating Software to the public, including by managing the Website (through which the Cheating Software could be purchased), promoting the Cheating Software, and assisting customers with their purchases. Such conduct constitutes "trafficking" in circumvention software.[2] *See*, *e.g.*, *U.S. v. Silvius*, 559 Fed.Appx. 490, 492 (6th Cir. 2014), *as amended* (Apr. 7, 2014) (upholding defendant's guilty plea to violations of the DMCA for offering "to the public via an internet website, […] the sale of illegal modification chips and swap discs, which were designed to circumvent the copyright protection features designed into Sony Playstation 2, Microsoft Xbox, and Nintendo Wii video game consoles by the video game console manufacturers to prevent the playback of pirated and/or counterfeit video games.") (internal quotations omitted).

---

[2] "To circumvent a technological measure means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner; and ... a technological measure effectively controls access to a work if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Microsoft Corp. v. Silver Star Micro, Inc.*, 2008 WL 115006, at *5 (N.D. Ga., Jan. 9, 2008, No. 1:06-CV-1350-WSD) (citing 17 U.S.C. § 1201(a)(3); internal quotations omitted).

Whether Thorpe also *developed* the Cheating Software is immaterial to his ultimate liability for *trafficking* in circumvention technology; unlawful trafficking includes "*offering* to the public" and "*providing*" circumvention technology. 17 U.S.C. § 1201(a)(2). As one court noted, "the anti-trafficking provision of the DMCA is implicated where one presents, holds out or makes a circumvention technology or device available, knowing its nature, for the purpose of allowing others to acquire it." *See Universal City Studios v. Reimerdes*, 111 F.Supp.2d 294 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001). Thus, courts have held defendants liable under Section 1201(a)(2) even when such persons acted as resellers of third party products or otherwise facilitated the distribution of such products. *See, e.g., Dish Network L.L.C. v. Ramirez*, No. 15-CV-04712-BLF, 2016 WL 3092184, at *3 (N.D. Cal. June 2, 2016) (default judgment where "DISH Network also alleges Ramirez trafficked in [circumvention devices] by buying and re-selling [software passwords.]"); *Dish Network LLC v. Barnaby*, No. 3:15-CV-492-TAV-HBG, 2016 WL 6603202, at *3 (E.D. Tenn. Nov. 8, 2016) (defendants trafficked in circumvention technology where they purchased and sold certain passcodes); *Comcast of Illinois X, LLC. v. Hightech Elecs.*, Inc., No. 03 C 3231, 2004 WL 1718522, at *7 (N.D. Ill. July 29, 2004) (plaintiff stated a circumvention claim against defendants who were "allegedly assisting sellers of illegal cable equipment in distributing such equipment."); *TracFone Wireless, Inc. v. Anadisk LLC*, 685 F. Supp. 2d 1304, 1317–18 (S.D. Fla. 2010) (holding that Defendants violated DMCA where "Defendants are, or are knowingly facilitating co-conspirators who are, trafficking in the service of circumventing [Plaintiff's] technological measures that effectively control access to [Plaintiff's software]."). Even just providing online links to circumvention software may be sufficient for liability. *Reimerdes*, 111 F.Supp.2d at 324 (providing links is the "functional equivalent of transferring the DeCSS code to the user themselves.")

Alternatively, Thorpe is secondarily (i.e. contributorily) liable for acts of trafficking engaged in by others, including the resellers who he hired to distribute the software and the developers on behalf of whom he worked.  *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 2019 WL 4166864, *13-14 (N.D. Ill. Sep. 3, 2019) (rejecting counter-defendants' argument that secondary liability principles do not apply in cases involving section 1201(a) because "[s]econdary liability is well established in the copyright context," having "stemmed from … generally applicable common law principles," and because counter-defendants failed to present any basis for concluding that such principles apply to some sections of the DMCA but not to Section 1201(a)); *Microsoft Corp. v. Silver Star Micro, Inc.*, 2008 WL 115006, *8 n.8 (N.D. Ga. Jan. 9, 2008) ("The Court analyzes contributory and vicarious liability under the DMCA in the same manner as determining personal liability for violations of the Copyright Act.").  Plaintiffs sufficiently alleged that Thorpe materially contributed to the distribution (i.e. trafficking) of circumvention devices by operating the website from which such devices could be acquired, encouraging and inducing members of the public to purchase such software, and marketing and promoting the software.  *See Sega Enterprises Ltd. v. MAPHIA*, 948 F.Supp. 923 (N.D. Cal. 1996) (website operator was liable for contributory infringement of video games by website users because the users that downloaded files from or uploaded files to the website directly infringed copyrights, the operator knew that the users were copying games, the operator provided the site and facilities for infringing conduct, and the operator actively solicited users to copy games and provided a road map on the site for easy identification of games available for downloading).

     For the same reason, Thorpe is liable for acts of contributory copyright infringement because he operated and managed the Ring-1 Website, on which infringing content was displayed.  *BWP Media USA Inc. v. Hollywood Fan Sites, LLC,* 69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014) (defendants liable for contributory

infringement of plaintiff's photographs on various websites because defendants "monitor the websites to ensure that content is updated on a regular basis.")

As a direct participant in the Ring-1 enterprise, and having facilitated the sale of the Cheating Software, Thorpe is jointly and severally liable for the unlawful conduct at issue. *See Adobe Systems Incorporated v. Blue Source Group, Inc.*, 125 F.Supp.3d 945, 97 (N.D. Cal. 2015) (Any member of the distribution chain of allegedly infringing products can be jointly and severally liable for the alleged misconduct in a copyright infringement case) (citing *Unicolors, Inc. v. Macy's, Inc.*, No. CV 14–08611–RGK SSX, 2015 WL 1020101, at *4 (C.D.Cal. Mar. 6, 2015)); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011) (Web hosting business and business's manager were jointly and severally liable for statutory damages awards for contributory infringement of two of luxury-goods distributor's copyrights); *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545 (9th Cir. 1989) (Parent corporation was jointly and severally liable with its wholly owned subsidiary for copyright infringement judgment against the subsidiary given the substantial and continuing relationship between the parent and subsidiary with respect to the infringing activities); *Bar's Leaks Western, Inc. v. Pollock*, 148 F.Supp. 710 (N.D. Cal. 1957) (In copyright actions, all persons participating in actionable conduct are jointly and severally liable).

Thorpe could have sought (and is free to seek) indemnification or contribution from any of the other participants in the venture. He could have disclosed to Plaintiffs the identity of any other participants in the venture or sought contribution, but instead he elected not to appear in the lawsuit. *See*, *e.g.*, *Blizzard Entertainment, Inc. v. Reeves*, 2010 WL 4054095, at *3 (C.D. Cal., Aug. 10, 2010, No. CV 09-7621 SVW AJWX) ("Although Plaintiff is unable to prove [that Defendant provided each of its users with anti-circumvention products or services on at least one occasion] definitively, the Court must draw all reasonable

inferences in Plaintiff's favor on account of Defendant's failure to participate in the litigation process.").

## IV. CONCLUSION

Plaintiffs respectfully request that the Court enter a default judgment in favor of Plaintiffs and against Defendant Thorpe, for a monetary award, an injunction in the form of the previously-filed Proposed Injunction, and costs and fees.

DATED: January 10, 2023　　　　　　MITCHELL SILBERBERG & KNUPP LLP

　　　　　　　　　　　　　　　　　　By: */s/ Marc E. Mayer*
　　　　　　　　　　　　　　　　　　　　　Marc E. Mayer
　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE CM/ECF

I hereby certify under penalty of perjury that on January 10, 2023, I electronically filed the foregoing document entitled **SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION OF PLAINTIFFS FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT ANDREW THORPE**, with the Clerk of Northern District of California by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Northern District of California's CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users and I have mailed the foregoing document by First Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Andrew L. Thorpe a/k/a Krypto
Flat 2
4 Clarence Road
Bridlington
YO15
**Defendant**

/s/ Marc E. Meyer
Attorney for Plaintiffs
E-mail: mem@msk.com