MARC E. MAYER (SBN 190969), mem@msk.com
EMILY F. EVITT (SBN 261491), efe@msk.com
GENEVIEVE JAVIDZAD (SBN 336138), glj@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUNGIE, INC., UBISOFT ENTERTAINMENT, and UBISOFT, INC., | CASE NO. 3:21-cv-05677-EMC |
| Plaintiff, | [Assigned to Judge Edward M. Chen] |
| vs. | **DECLARATION OF MARC MAYER IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION OF PLAINTIFFS FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT ANDREW THORPE** |
| ANDREW THORPE a/k/a KRYPTO, an individual; JONATHAN AGUEDA a/k/a OVERPOWERED, an individual; WESAM MOHAMMED a/k/a GRIZZY, an individual; AHMAD MOHAMMED, an individual; and Does 1 through 50, inclusive, | Date: January 19, 2023<br>Time: 2:30 p.m. |
| Defendants. | Complaint Filed: July 23, 2021 |

Mitchell
Silberberg &
Knupp LLP

15082275.1

CASE NO. 3:21-cv-05677

DECLARATION OF MARC MAYER IN SUPPORT OF SUPPLEMENTAL BRIEF

1

## DECLARATION OF MARC MAYER

2
I, MARC MAYER, declare:

3
1.      I am an attorney at law, duly licensed to practice law in the State of

4
California and before this United States District Court.  I am, through my

5
professional corporation, a partner in the law firm of Mitchell Silberberg & Knupp

6
LLP, attorneys of record for Plaintiffs Ubisoft Entertainment, Ubisoft, Inc.

7
(collectively "Ubisoft"), and Bungie, Inc. ("Bungie") (together with Ubisoft,

8
"Plaintiffs").  Unless otherwise stated, I have personal knowledge of the following

9
facts and, if called and sworn as a witness, could and would competently testify

10
thereto.

11
2.      On February 28, 2022, I sent a letter to NiceVPS putting NiceVPS on

12
notice of this lawsuit and of its potential liability, and demanding that NiceVPS (1)

13
cease providing any and all services to Ring-1 or any person or entity responsible

14
for Ring-1 or the ring-1.io domain name; (2) provide Plaintiffs with all information

15
in NiceVPS's possession concerning the account responsible for the Ring-1 and the

16
ring-1.io domain name (including contact information, transaction records, and IP

17
addresses used to set up and access the account); and (3) preserve all documents in

18
NiceVPS's possession concerning Ring-1 or the ring-1.io domain name.  Attached

19
hereto as **Exhibit 1** is a true and correct copy of this correspondence.

20
3.      NiceVPS failed to respond to this communication. Moreover, as a

21
matter of policy as stated in its Terms of Service, Nice VPS "will NOT reply to any

22
abuse complaint" or other inquiries. Attached hereto as **Exhibit 2** is a true and

23
correct copy of NiceVPS's Terms of Service.  This screen capture was created by

24
my office, at my direction, on March 1, 2022.

25
///

26
///

27
///

28
///

Mitchell
Silberberg &
Knupp LLP

15082275.1

**DECLARATION OF MARC MAYER IN SUPPORT OF SUPPLEMENTAL BRIEF**

1     4.     Plaintiffs also did not receive any responses to the subpoena sent to

2  Ring-1's Michigan-based payment processor, Lexpay, which was served on

3  December 21, 2021.  Attached hereto as **Exhibit 3** is a true and correct copy of

4  Plaintiffs' subpoena to Lex Holdings Group, the owner and operator of Lexpay.

6     I declare under penalty of perjury under the laws of the State of California

7  that the foregoing is true and correct.

8     Executed January 10, 2023, at Los Angeles, California.

10                  */s/ Marc E. Mayer*

11                    Marc E. Mayer

Mitchell
Silberberg &
Knupp LLP

15082275.1

3     CASE NO. 3:21-cv-05677

**DECLARATION OF MARC MAYER IN SUPPORT OF SUPPLEMENTAL BRIEF**

# EXHIBIT 1

Exhibit 1
Page 4

| From: | Melara, Suguey |
|---|---|
| To: | "support@nicevps.net"; "noc@as49447.net"; "abuse@as49447.net"; "admin@nicevps.net"; "itsnice@protonmail.com" |
| Cc: | Mayer, Marc |
| Subject: | Ring-1.io |
| Date: | Monday, February 28, 2022 7:16:07 PM |
| Attachments: | 2022-02-28 LTR Mayer to NiceVPS.pdf |

To Whom It May Concern,

Please see correspondence attached.

Thank you.



**Suguey Melara | Secretary**

T: 310.914.7948 | szm@msk.com

**Mitchell Silberberg & Knupp LLP** | **www.msk.com**

2049 Century Park East, 18th Floor, Los Angeles, CA 90067

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

Exhibit 1
Page 5



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Marc E. Mayer
A Professional Corporation
(310) 312-3154 Phone
(310) 231-8354 Fax
mem@msk.com

February 28, 2022

**VIA E-MAIL**

Nice IT Services Group, Inc. d/b/a NICE VPS
28 Cork Street
00152 Roseau
DOMINICA
support@nicevps.net
noc@as49447.net
abuse@as49447.net
admin@nicevps.net
itsnice@protonmail.com

**Re:      Ring-1.io**

To Whom It May Concern:

We are counsel for Ubisoft Entertainment, Ubisoft, Inc. (together, "Ubisoft") and Bungie, Inc. ("Bungie") (collectively, "Plaintiffs.")  Ubisoft and Bungie are among the leading makers and distributors of interactive entertainment products, including the popular video games *Tom Clancy's Rainbow Six Siege* ("R6S") and *Destiny 2* ("D2"), respectively (collectively, the "Games.")  As such, Ubisoft is the owner of all right, title, and interest (including all rights under U.S. and international copyright law) in R6S, and Bungie is the owner of all right, title, and interest (including all rights under U.S. and international copyright law) in D2.

It has come to our attention that NiceVPS has been providing various services, including domain registration services and hosting services, to an entity known as "Ring-1."  Specifically, we understand that you are the registrant of the Ring-1.io domain name and provide hosting services for the Ring-1.io website (the "Ring-1 Website"), located at 45.9.149.117.  Ring-1 is in the business of developing, selling, marketing, and distributing a set of software products designed to enable players to cheat in popular video games, including R6S and D2.  These software products contain technology that is designed to circumvent access control protection contained within R6S and D2 and avoid detection by Plaintiffs and their anti-cheat software.  Additionally, the Ring-1 software creates unauthorized derivative works of Plaintiffs' Games and induces Plaintiff's customers to breach their agreements with Plaintiffs.  Ring-1's products are marketed and sold to the public, including United States residents, via the Ring-1 Website.

On July 23, 2021, Plaintiffs filed a lawsuit in the United States District Court for the Northern District of California against the owners, administrators, and operators of the Ring-1 enterprise and website (the "Lawsuit").  The Lawsuit alleges that the Defendants engaged in unlawful trafficking in circumvention devices, copyright infringement, trademark infringement, false

2049 Century Park East, 18th Floor, Los Angeles, California 90067-3120
Phone:  (310) 312-2000  Fax:  (310) 312-3100  Website: WWW.MSK.COM

Exhibit 1
Page 6



Nice IT Services Group, Inc. d/b/a NICE VPS
February 28, 2022
Page 2

designation of origin, intentional interference with contractual relations, and unfair competition. A copy of the Complaint in the Lawsuit is attached hereto, and contains detailed allegations concerning Defendants' conduct.

We are writing to place NiceVPS on clear and formal notice of the Lawsuit and of the unlawful activities engaged in by Ring-1's developers, administrators, resellers, and other representatives and agents by and through the Ring-1 Website. We also wish to place NiceVPS on notice that through its own activities and actions, NiceVPS is contributing to the foregoing unlawful conduct. Specifically, by offering critical services to Ring-1, with knowledge of the unlawful nature of Ring-1's activities, NiceVPS is aiding and abetting Ring-1's trafficking in circumvention devices. *See Gordon v. Nextel Communications et al.*, 345 F.3d 922, 925-26 (6th Cir. 2003). NiceVPS also may be engaged in acts of contributory and/or vicarious copyright infringement, as it is providing the "site and facilities" for infringing conduct. *See, e.g., Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996); *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F. Supp. 2d 1146 (C.D. Cal. 2002).

In addition to the foregoing, to the extent NiceVPS is working in concert with Ring-1 and its operators (including by taking steps to conceal the identity of those operators), it may be liable for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), including because Ring-1 is an enterprise engaged in illegal activity, such as criminal acts under Section 1201 and 1204 of the Digital Millennium Copyright Act ("DMCA.")

As you certainly must know, NiceVPS's policies that it will "not censor nor judge anything you host," "will NOT reply to any abuse complaint," and "is not liable or responsible for any abuse and/or copyright infringements caused by what the Customer hosted on NiceVPS's servers" will not insulate NiceVPS from liability. To the contrary, these policies reflect NiceVPS' bad faith intent to facilitate the distribution of unlawful content. NiceVPS is well aware that many of its clients are engaged in unlawful activities, and is now on actual notice of the activities being engaged in by Ring-1.

Accordingly, by this letter, we hereby demand that NiceVPS immediately (1) cease providing any and all services to Ring-1 or any person or entity responsible for Ring-1 or the ring-1.io domain name; (2) provide us with all information in NiceVPS's possession concerning the account responsible for the Ring-1 and the ring-1.io domain name (including contact information, transaction records, and IP addresses used to set up and access the account); and (3) preserve all documents in NiceVPS's possession concerning Ring-1 or the ring-1.io domain name. Please confirm to us within five (5) days of receipt of this letter that you will comply with these demands.

As you can understand, our clients' intellectual property is extremely valuable. Accordingly, if we do not hear from you, our clients are prepared to amend the Complaint to include NiceVPS as a defendant in the Lawsuit.[1] Please also note that, should NiceVPS elect not to respond to the

---

[1] As you may be aware, courts in the United States have permitted plaintiffs to effectuate service of process by email to persons or entities located in Dominica. *See Rosen v. Imagevenue.com*, 2014 WL 12601326 (C.D. Cal. Aug. 11, 2014).

Doc ID

Exhibit 1
Page 7



Nice IT Services Group, Inc. d/b/a NICE VPS
February 28, 2022
Page 3

Lawsuit, we will seek a default judgment and permanent injunction, which will include monetary damages, as well as an order directing NameSilo to transfer the Ring-1.io domain name to Bungie and Ubisoft and directing both NiceVPS and RIPE NCC to cease providing services to Ring-1 (including the website located at 45.9.149.117).

Please feel free to contact me should you have any questions or wish to discuss this matter further.

This letter is not a complete recitation of the facts nor statement of our clients' position, and nothing contained herein is intended to, nor shall it, constitute a waiver or relinquishment of any rights, claims, defenses, or causes of action possessed by our clients, all of which expressly are reserved.

Sincerely,

Marc E. Mayer
A Professional Corporation of
MITCHELL SILBERBERG & KNUPP LLP

MEM

Doc ID

Exhibit 1
Page 8

# EXHIBIT 2

Exhibit 2
Page 9

# Terms Of Service

Home  /  Terms Of Service

Original language: English | Last update: 2017-11-1

# Full terms

**The following terms and conditions (these "Terms") govern the provision by NiceVPS ("Company") of the services and/or products (referred collectively herein as ("Services and Products") described on the Server Order Form, the Service Level Agreement and Service Exhibit attached hereto (collectively the "Service Descriptions") and defined in any of the Company's product support listing, to the customer ("Customer") identified on the Service Descriptions. The Service Descriptions, these Terms and the attachments and any addenda hereto, executed with respect to the Services and Products, are referred to herein, collectively, as this "Agreement." NiceVPS reserves the right to change and update this document as needs change or arise.**

1. **Provided Resources.** Customer will be provided with the amount of disk space and bandwidth stated in their quote or plan from NiceVPS. Disk space usage and bandwidth usage are monitored by NiceVPS and will be provided to the client to use at their leisure. Customers are responsible for purchasing additional disk space or bandwidth beyond that detailed in their "Plan" or to remove files and stop network usage in order to bring their usage with their Plan's limit. In one month you may use a extra 5% of your quota, however continued heavy usage of this will require an upgrade or extra usage fees. Unlimited data transfer is provided on a basis of a Fair Usage Policy, excessive bandwidth usage may not be permitted and may incur in additional charges and/or port speed limitation prior mutual agreement.

2. **Jurisdiction and Jurisdictional Disputes, Legal Responsibilities.** The parties expressly recognize that, where NiceVPS is acting solely as Customer's Host, NiceVPS is not engaged in, and is not actively soliciting, interstate or international commerce for said Customer. Where NiceVPS is a named party to any type of dispute or litigation involving any acts by Customer that affect out-of-state persons or entities, Customer agrees that it shall indemnify, hold NiceVPS harmless, defend NiceVPS exhaustively (including all legal cost(s), and challenge the jurisdiction of out of state authorities over NiceVPS). Any legal issue must be resolved by the laws in the Commonwealth of Dominica.

3. **Availability and Backups.** NiceVPS shall store Customer's web sites, files, email and databases on their servers. The parties expressly recognize that internet servers and links are susceptible to crashes, down time, vulnerabilities and that from time to time NiceVPS may need to preform maintenance on their services. Customers with unmanaged services are to manage their own backups at their own expense. NiceVPS is not responsible for data that you may have lost due to said crashes, down time or vulnerabilities. In addition NiceVPS will not support illegal activities by providing you with a backup if your Web Hosting

Exhibit 2
Page 10

contains any of the materials found under the Abuse section of this document. Due to the nature of computer hardware, NiceVPS is not liable for any data loss occurred.

4. **Maintenance.** NiceVPS may temporarily suspend all service for the purpose of repair, maintenance or improvement of any of its systems, or whatever it deems necessary to maintain adequate services. However, NiceVPS shall provide prior notice within 24 hours for all maintenance. Failure to provide prior notice on our part does fall under our SLA.

5. **Connection and Bandwidth.** Subject to the datacenter's physical location. NiceVPS agrees that it shall maintain a minimum of 1Gbps connections to the servers. However, NiceVPS does not guarantee any response rate, download, or upload speed beyond our control, as this is depending on Customer's and End Users ISP connections. We do NOT guarantee a set internet speed to your server. Your service might be suspended if it receives and or sends any DDoS attack or an abnormal spike in traffic emanate or is received by your server. Service activation or termination after the suspension will be in our sole discretion. NiceVPS does not guarantee that any IP address space will be globally accessible due to factors out of our control.

6. **Security.** The parties expressly recognize that it is impossible to maintain flawless security, therefore the customer is solely responsible for properly securing their hosting service provided by NiceVPS including changing initial passwords and making any security adjustments and patches over time. Customer is solely responsible for any damage caused by such unauthorized access, and Customer indemnifies and holds NiceVPS harmless for any compromise of Customer's security that resulted from their own actions, the actions of NiceVPS or the actions of any third party.

7. **Privacy.** By default NiceVPS only collects an email address, an username, and a password encrypted using strong encryption algorithms when you sign up. All customer data is encrypted on the storage disk, however after the system is online data may be readily available in plain text except passwords or secret keys. Data encryption is possible on NiceVPS, however Customer is solely responsible for encoding their web site, content, and data to conform with generally accepted encryption standards, and Customer indemnifies and holds NiceVPS harmless for any compromise of Customer's encryption method. You agree to indemnify and hold NiceVPS harmless and blameless for any compromise of your personal, business, or private information in any form.

8. **Browser Cookies.** By default, a session cookie is stored into the visitor's browser due to the stateless nature of the World Wide Web protocols, for the sole purpose of providing this web service. An additional cookie is created and stored into the computer when the Customer opts-in for a login remember, for the sole purpose as how it was offered.

9. **Refunds.** NiceVPS does NOT provide refunds. Refunds are only possible within the first 24 hours from the effective payment date in case of an error caused by NiceVPS or due to the impossibility of providing Customer with the requested service. Processing fees, administrative fees, setup fees, management services, or any other kind of fees associated with your payment or service are not eligible for refunds. Our administration fee consists of (One percent) 1% of the total refundable amount with a minimum of (Two Euros) 2.00 EUR. Initiating a dispute or a charge-back with our payment processors may result in instant service suspension or termination. Breaching this present of terms of service invalidates any right for a refund.

10. **Email Communication.** By default, NiceVPS does NOT send any newsletter or unsolicited email. Transactional, service-related, account-related, operational and notification emails may be sent regardless

Exhibit 2
Page 11

2/4

of the subscription status. Personal identifiable information is never sent along with our emails, solely an username may be sent.

11. **Abuse, Copyright and Freedom of Speech.** By default, NiceVPS defends freedom of speech and will NOT reply to any abuse complaint; Customer will be notified within 48 hours and must resolve any abuse, blacklist or report within (five) 5 working days. NiceVPS is not liable responsible for any abuse and/or copyright infringements caused by what the Customer hosted on NiceVPS's servers. NiceVPS defends the freedom of speech but illegal activities are not tolerated. In some cases, NiceVPS may temporarily null-route Customer services from the public Internet until the abuse is resolved but never suspend said services. Hosting child pornography, terrorist propaganda, but not limited to, is COMPLETELY forbidden and any client found to be doing so will be cancelled immediately upon discovery.

12. **Suspension and Termination.** NiceVPS will NOT suspend any account unless a court order in the Commonwealth of Dominica dictates so, however, NiceVPS reserves the right to suspend or terminate any account at any time, under their own discretion. NiceVPS will suspend services automatically after paid term is complete. Customer is responsible of renewal before the end date; NiceVPS will notify customer (seven) 7 days prior to the end of the subscription period. After 2 days of non-payment, services will be terminated irrevocably along with all data and any other related assets.

13. **Domain Name Services.** Customer domain names are registered under the name of NiceVPS, on behalf of said Customer. NiceVPS shall not have the actual ownership of the domains registered through our system. Customer retains the right to sell, transfer, assign, control, renew each domain name registration upon expiration, being as well responsible to resolve any and all monetary or other legal claims that arise in connection with Customer's domain. We do not guarantee that you will obtain the domain name applied for, even if your inquiry has indicated that the domain name is available at the time of submission. NiceVPS provides no warranty with regard to the offered services. Domain registration, renew or transfer fees may change at any time.

14. **Final note.** Failure by either Company (NiceVPS) or Customer to enforce any of the provisions of this Agreement or any rights with respect hereto or the failure to exercise any option provided hereunder shall in no way be considered to be waiver of such provisions, rights or options, or to in any way affect the validity of this Agreement. If one or more of the provisions contained in this Agreement are found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions shall not be affected. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This agreement may suffer changes without prior notice.

News (./news) | Payments (./index/payments) | Terms of Service (./index/tos) | PGP (./index/pgp) | Canary (./index/canary) | Contact (./contact)

TOR Link: https://nicevpsb7u3vqpo5zhyahmvfi5tihon4gnh676ucmzpcyxwodeztr4yd.onion (https://nicevpsb7u3vqpo5zhyahmvfi5tihon4gnh676ucmzpcyxwodeztr4yd.onion)

hPanel v2.3.12b-prod (c) NiceVPS
Server Time: 2022-03-01 20:11:00 (GMT+0100)

https://nicevps.net/index/tos

Exhibit 2
Page 12

3/4

UI Theme

| default | ⌄ |

Exhibit 2
Page 13

# EXHIBIT 3

Exhibit 3
Page 14

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bungie, Inc., et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| Andrew Thorpe, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No. 3:21-cv-05677-EMC

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: LEX HOLDINGS GROUP, LLC c/o Registered Agents Inc., 2222 W. Grand River Ave, Suite A, Okemos, MI, 48864

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A.

| | |
|---|---|
| Place: First Legal Records c/o Relentless Court Services, Inc.<br>4337 E. Grand River #101<br>Howell, Michigan 48843 | Date and Time:<br>January 10, 2022 at 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | |
|---|---|
| Place: | Date and Time: |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| | | |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |
| | | Marc E. Mayer |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiffs Bungie, Inc., Ubisoft Entertainment, and Ubisoft, Inc. _____ , who issues or requests this subpoena, are:

Marc E. Mayer / Mitchell Silberberg & Knupp LLP / 2049 Century Park East, 18th Floor, Los Angeles, CA 90067 / Telephone: 310-312-2000, mem@msk.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

American LegalNet, Inc.<br>www.FormsWorkFlow.com

Exhibit 3

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:21-cv-05677-EMC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

Exhibit 3
Page 16

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

---



Exhibit 3
Page 17

## ATTACHMENT A

### I. INSTRUCTIONS

1.      Lex Holdings Group, LLC ("Lex Holdings"), including its subsidiaries, related entities, and/or divisions, and any of its successors and/or assigns, is to make available for copying all requested documents that are in its possession, custody, or control, including documents in the possession, custody, or control of its attorneys, accountants, agents, representatives, or any other persons acting on its behalf.

2.      Lex Holdings is to produce any Microsoft Excel and/or other database-related files in their native electronic format.

3.      Should a claim be made that any subpoenaed document is not subject to discovery by reason of privilege or some other legal protection, please provide a privilege log containing the information required by Fed. R. Civ. P. 26(b)(5).

### II. DEFINITIONS

As used herein, the following terms are intended to have the meanings indicated:

1.      The phrase "All Documents" means every Document, whether an original or copy as defined below, and every such Document or writing that can be located through reasonably diligent efforts.

2.      "And" means "and/or" and "or" means "and/or."  The plural of any word used herein includes the singular, and the singular includes the plural.  The masculine gender of any word used herein includes the feminine.  The past tense of a verb used herein includes the present tense, and the present tense includes the past tense.

3.      The terms "Document" and "Documents" include without limitation the original and all drafts of all written or graphic matter, however produced or reproduced, of any kind or description, and all copies thereof which are different from the original (whether different by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise), whether printed or recorded electronically or magnetically or reproduced by hand, including documents and electronically stored information as defined by Rule 34(a) of the Federal Rules of Civil Procedure and writings and recordings as defined by Rule 1001(1) of the Federal Rules of Evidence.  Examples of "Documents" are: agreements or contracts, communications, correspondence, e-mails, telegrams, cables, memoranda, records, books, summaries of records or personal conversations or interviews, diaries, desk calendars, appointment books, journals, message pads, forecasts, statistical statements, accountants' workpapers, graphs, charts, diagrams, certificates and certifications, tables, indexes, pictures, recordings, sound recordings, images, data or data compilations stored in any medium, tapes, microfilm, charges, accounts, analytical records, minutes or records of meetings, conferences or conversations, reports or summaries of interviews, reports or summaries of investigations, texts or surveys, opinions or reports of consultants, appraisals, reports or summaries of negotiations, advertisements, brochures, pamphlets, circulars, trade letters, press releases, stenographic or handwritten or other notes, projections, working papers, checks front and back, check stubs or receipts, envelopes,

13473636.1

Exhibit 3
Page 18

invoice vouchers, data processing cards, tapes, backup tapes, disks or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, and any other document or writing of whatever description, including but not limited to any other information contained in any computer, computer peripheral equipment, computer library, or website, although not yet printed.

4.　　The term "IP Address" means Internet Protocol address and Internet Protocol number.

5.　　The term "Identify" means:

(a)　　for individuals, to provide the name, Social Security number, date of birth, home addresses, office addresses, mailing addresses, billing addresses, e-mail addresses, telephone numbers, facsimile numbers, Media Access Control number, related Internet websites, IP Addresses used by the subscriber with the date, time zone, hour, minute, and second when each IP Address was used, and any and all other identifying information, including, for example, information contained on any activity logs;

(b)　　for entities, to provide the name, office addresses, mailing addresses, billing addresses, e-mail addresses, telephone numbers, facsimile numbers, Media Access Control number, related Internet websites, IP Addresses used by the subscriber with the date, time zone, hour, minute, and second when each IP Address was used, and any and all other identifying information, including, for example, information contained on any activity logs; and

(c)　　in all other instances, the term shall be construed in accordance with its ordinary meaning, with the object of providing information sufficient to permit complete and accurate identification of the requested subject matter.

### III. DOCUMENTS REQUESTED

1.　　All Documents sufficient to Identify all individuals, entities, and accounts associated with the operation, administration, management, or ownership of the following websites at any time from May 1, 2019 to the present:

(a) Ring-1.io

2.　　All Documents sufficient to Identify all individuals, entities, and accounts that have made payments to Lex Holdings or any related entity, and/or have been charged by Lex Holdings or any related entity, in connection with payment processing duties or activities relating to the following websites at any time from May 1, 2019 to the present:

(a) Ring-1.io

3.　　All IP Addresses used to access, log into, register, or update any of the Lex Holdings accounts identified in response to Document Request Nos. 1 and 2.

4.　　All Documents sufficient to Identify all individuals, entities, LLC members, and owners associated with Lex Holdings.

13473636.1

Exhibit 3
Page 19

| | | | | For Court Use Only |
|---|---|---|---|---|

*Attorney or Party without Attorney:*
Marc E. Mayer
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East 18th Floor
Los Angeles, CA 90067
  *Telephone No:*  310-312-2000

  *Attorney For:*  Plaintiffs: Bungie, Inc., Ubisoft
                Entertainment, and Ubisoft, Inc.

*Ref. No. or File No.:*

*Insert name of Court, and Judicial District and Branch Court:*
UNITED STATES DISTRICT COURT for the NORTHERN DISTRICT OF CALIFORNIA

*Plaintiff:*   Bungie, Inc., et al.
*Defendant:*   Andrew Thorpe, et al.

| PROOF OF SERVICE | *Hearing Date:* January 10, 2022 | *Time:* 10:00 am | *Dept/Div:* | *Case Number:* 3:21-cv-05677-EMC |
|---|---|---|---|---|

1.  *At the time of service I was at least 18 years of age and not a party to this action.*

2.  I served copies of the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

3.  *a.*  *Party served:*     LEX HOLDINGS GROUP, LLC
    *b.*  *Person served:*   Madeline B. Robbins, Authorized to Accept Service

4.  *Address where the party was served:*   222 W. Grand River Ave Suite A, Okemos, MI 48864

5.  *I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon, Dec 20 2021 (2) at: 09:31 AM

6.  **Person Who Served Papers:**
    a. Joshua Powell                                    **d.** *The Fee* for Service was:
    **b. FIRST LEGAL**
       1517 W. Beverly Blvd.
       LOS ANGELES, CA 90026
    c. (213) 250-1111

7.  *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*


            12/21/2021

             *(Date)*                              *(Signature)*




PROOF OF
SERVICE

6472024
(4845053)

Exhibit 3
Page 20

1

## CERTIFICATE OF SERVICE CM/ECF

2      I hereby certify under penalty of perjury that on December 13, 2022, I

3 electronically filed the foregoing document entitled **DECLARATION OF MARC**

4 **E. MAYER IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF**

5 **MOTION OF PLAINTIFFS FOR ENTRY OF DEFAULT JUDGMENT**

6 **AGAINST DEFENDANT ANDREW THORPE**, with the Clerk of Central

7 District of California by using the Court's CM/ECF system.

8      Participants in the case who are registered CM/ECF users will be served by

9 the Central District of California's CM/ECF system.

10      I further certify that some of the participants in the case are not registered

11 CM/ECF users and I have mailed the foregoing document by First Class Mail,

12 postage prepaid, or have dispatched it to a third-party commercial carrier for

13 delivery within 3 calendar days to the following non-CM/ECF participants:

14  Andrew L. Thorpe a/k/a Krypto
15  Flat 2
    4 Clarence Road
16  Bridlington
    YO15
17  **Defendant**

18

19                                              /s/ Marc E. Mayer
20                                              Attorney for Plaintiffs
                                                E-mail: mem@msk.com
21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

15082275.1

**DECLARATION OF MARC MAYER IN SUPPORT OF SUPPLEMENTAL BRIEF**